1

2

3

4

5

6

7

8

9                        UNITED STATES DISTRICT COURT

10                       EASTERN DISTRICT OF CALIFORNIA

11                            ----oo0oo----

12  UNITED STATES OF AMERICA,
                                        NO. CIV. S-07-2172 FCD/EFB
13          Plaintiff,

14       v.                             MEMORANDUM AND ORDER

15  12.94 ACRES OF LAND IN THE
    COUNTY OF SOLANO, et al.,
16
            Defendants.
17
                              ----oo0oo----

18       This condemnation action is before the court on plaintiff

19  United States of America's ("plaintiff") motion for summary

20  judgment on the ground defendants[1] lack admissible evidence

21  sufficient to establish a triable issue of material fact

22  regarding the valuation of the subject property (12.94 acres of

23  land in the County of Solano).  In brief, plaintiff argues

24  defendants' appraiser, John Nicolaou ("Nicolaou"), is unqualified

25  to opine on the value of federally condemned property, did not

26  _____

27       [1]    Defendants are Ted Aksnes ("Aksnes"), Solano Green
    Acres, LLC ("SGA") and Bill C. and Betty L. Maher, Trustees of
    the Maher Family Trust of 1988 ("Maher Trust") (collectively,
28  "defendants").

                                  1

properly analyze accepted methodologies and made critical
calculation errors and failed to use appropriate or reliable
data, thereby rendering his opinions inadmissible.  Plaintiff
further contends that Bill Maher ("Maher"), an owner of the
property, cannot create a triable issue because his testimony
during deposition and declaration submitted on the motion do not
offer any valuation opinions.

     Contrary to defendants' experts, plaintiff maintains that
its experts, appraiser Steve Roach ("Roach") and engineer Kelly
Birkes ("Birkes"), have correctly determined just compensation
for the property is $295,000.00.  Because defendants did not
offer any rebuttal expert reports to Roach's and Birkes' reports
and because their own experts fail to offer admissible evidence,
plaintiff argues it is entitled to judgment in its favor in the
amount of $295,000.00.

     Defendants oppose the motion, arguing Nicolaou's and Maher's
testimony, setting the amount of just compensation at
$2,319,000.00, is admissible and sufficient for defendants to
withstand summary judgment.  Ultimately, defendants contend
plaintiff's arguments go to the weight of Nicolaou's and Maher's
testimony not its admissibility.

     The court heard oral argument on the motion on November 25,
2009.  By this order, it now renders its decision, granting
plaintiff's motion.

BACKGROUND[2]

### 1. Subject Property

The 12.94 acres of condemned land (sometimes referred to herein as the "take parcel") was part of a larger 306.76 acre parcel ("larger parcel") in Solano County, owned by defendant Maher Trust and located next to Travis Air Force Base. (UF #1.) The government is taking the parcel to relocate, redesign and expand the south gate entrance to the base. The new gate area will be constructed and operated on the take parcel and will include multiple lanes for the queuing and inspection of large trucks making deliveries to Travis. (Id.)

The larger parcel has historically been used for agriculture and/or cattle grazing, and the 293.82 remainder parcel is still used for that purpose today. (UF #61.) The property is zoned A-160 Exclusive Agriculture, which requires 160 acres per home lot size. (UF #62.) A 1,344 square foot manufactured home was condemned as part of the take parcel, and the prior tenants were relocated. (Pl.'s Request for Judicial Notice ("RJN"), filed

---

[2]    The court finds the following facts undisputed. (Pl.'s Reply to Defs.' Resp. to Sep. Stmt. of Undisputed Facts ["UF"], filed Nov. 18, 2009 [Docket #100]; Pl.'s Resp. to Defs.' Stmt. of Disp. Facts ["RDF"], filed Nov. 18, 2009 [Docket #101].) In some critical respects, defendants attempt to dispute plaintiff's undisputed facts but they have not submitted material and admissible evidence to do so. As such, the court finds those facts undisputed.

Both plaintiff and defendants have filed objections to evidence. The court has reviewed the objections and the disputed evidence and relies only on admissible evidence herein. See Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Accordingly, plaintiff's objections to defendants' evidence, where relevant below, are sustained (Docket #99); defendants' objections to plaintiff's evidence are overruled (Docket #98).

Oct. 13, 2009, #s 1, 7.)  The remainder parcel has an old
long-abandoned home, two barns and corrals.  (RJN #13.)

Numerous private and public restrictions and easements limit
the property's legal uses.  (UF #63.)  Thirty feet of accessible
frontage along the property's western boundary exists for the
remainder parcel.  (UF #2.)  To restore access to the barns and
the interior of the remainder parcel, a roadway will have to be
constructed from the 30 foot access along Peterson Road to the
barns.  (RDF ¶ 13.)  Defendants contend, however, that this new
road will be inadequate and unsafe, considering the remainder
property is used for ranching activities where large trucks are
used to transport cattle, feed, hay and equipment to and from the
barns.  (RDF ¶s 12, 54.)  Defendants assert it will be difficult
if not impossible for these large trucks to make the sharp turn
necessary to enter and exit the 30 foot driveway.  (RDF ¶ 55.)

### 2.  <u>Plaintiff's Efforts to Acquire the Property</u>

After Congress authorized security and force improvements at
Travis Air Force Base, the government began a multi-year effort
to acquire the 12.94 acres from the Maher Trust.  (UF #3.)
Maher, as trustee, was not opposed to the government's
acquisition of the 12.94 acres but the parties could not agree on
a sales price.  (UF #4.)  While those negotiations were ongoing,
in April 2005, Maher contracted to sell the entire 306.76 acre
parcel to Bancor Properties for $2.4 million.  (UF #5.)  Bancor
wanted to subdivide the property, but no zoning change was
sought, and Bancor did not complete the purchase.  (UF #6.)
Maher subsequently entered, on October 6, 2006, another $2.4
million sales contract with his broker, defendant Aksnes, and

4

defendant SGA but escrow has not closed even though the contract
was entered three years ago.  (UF #s 7, 8.)

### 3.  **Procedural History**

On October 12, 2007, plaintiff filed a Complaint in
Condemnation for the 12.94 acres and deposited the estimated just
compensation.  (UF #9.)  On December 11, 2007, plaintiff was
granted immediate possession and title to the 12.94 acres.
(UF #11.)  Most defendants disclaimed interest in the property.
(RJN #7.)  The remaining defendants, the Maher Trust, Aksnes, and
SGA, answered but did not assert any affirmative defenses or
demand a jury.  (UF #10.)

On July 31, 2009, the parties exchanged expert reports.
(UF #12.)  Plaintiff disclosed Roach and Birkes who determined
just compensation for the property is $295,000.00.  (UF #s 12,
103-120.)  Defendants disclosed Nicolaou and Dan Norton, a
biologist.[3]  (UF #s 12, 13.)  Defendants did not offer any
rebuttal reports to Roach's or Birkes' reports.  (UF #s 15, 115.)

A bench trial is scheduled for March 23, 2010. (RJN #s 8,
9.)

### STANDARD

The Federal Rules of Civil Procedure provide for summary
judgment where "the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant is

---

[3]   Norton's testimony related to the issue of mitigation
banking but because defendants concede in their opposition that
they do not seek valuation of the property based on its use as a
mitigation bank, Norton's expert report is not relevant to the
motion.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);
see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).
The evidence must be viewed in the light most favorable to the
nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th
Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating
the absence of a genuine issue of fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to
meet this burden, "the nonmoving party has no obligation to
produce anything, even if the nonmoving party would have the
ultimate burden of persuasion at trial."  Nissan Fire & Marine
Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).
However, if the nonmoving party has the burden of proof at trial,
the moving party only needs to show "that there is an absence of
evidence to support the nonmoving party's case."  Celotex Corp.,
477 U.S. at 325.

Once the moving party has met its burden of proof, the
nonmoving party must produce evidence on which a reasonable trier
of fact could find in its favor viewing the record as a whole in
light of the evidentiary burden the law places on that party.
See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th
Cir. 1995).  The nonmoving party cannot simply rest on its
allegations without any significant probative evidence tending to
support the complaint.  See Nissan Fire & Marine, 210 F.3d at
1107.  Instead, through admissible evidence the nonmoving party
"must set forth specific facts showing that there is a genuine

6

issue for trial." Fed. R. Civ. P. 56(e).[4]

## ANALYSIS

The United States can condemn property but it must pay just compensation for the value of what is taken. U.S. Const., Amend. V. In condemnation proceedings, the government announces what land it needs and the landowners present, in their answers, any objections or defenses to the taking and then just compensation is determined. Fed. R. Civ. P. 71.1. Here, defendants did not interpose any objections to condemnation. (UF #s 4, 10, 11.) The sole issue is the amount of just compensation.

The property owner bears the burden of proving just compensation on the condemnation date. <u>United States ex rel. TVA v. Powelson</u>, 319 U.S. 266, 273 (1943). When a whole parcel is taken, just compensation is the fair market value of the property at the time of the taking. <u>Olson v. United States</u>, 292 U.S. 246, 255 (1934). When only a portion of property is condemned, just compensation is the difference between the fair market value of the whole parcel immediately before the taking and the remainder after the taking. <u>See e.g. United States v. Miller</u>, 317 U.S. 369, 376 (1943). The part taken is not valued as a separate parcel since just compensation is determined by the owner's loss and not the taker's gain. <u>Nichols on Eminent Domain</u>, 3d Ed., § 12.03; <u>Powelson</u>, 319 U.S. at 281. A property owner "must be made whole but is not entitled to more." <u>Olson</u>, 292 U.S. at

---

[4]    Federal Rule of Civil Procedure 71.1 governs procedural matters in federal condemnation cases.  As in any civil case, the government, as a plaintiff, may move for summary judgment.  <u>See e.g.</u> <u>Etalook v. Exxon Pipeline Co.</u>, 831 F.2d 1440 (9th Cir. 1987).

1  255.[5]

2      Market value is the price a reasonable seller would demand,

3  and the price a reasonable buyer would pay, for the property.

4  Fair market value must be based on the property's "highest and

5  best use," which is the most profitable, legal use for which the

6  property is adaptable and needed or likely to be needed in the

7  reasonably near future.  Olson, 292 U.S. at 255.  An award of

8  just compensation may not be predicated on speculative or

9  conjectural potential.  Id.

10     Here, plaintiff moves for summary judgment on the ground

11 defendants lack admissible evidence sufficient to establish a

12 triable issue of material fact regarding the valuation of the

13 subject property.  More specifically, with respect to defendants'

14 expert Nicolaou, plaintiff contends he is unqualified to opine on

15 the value of federally condemned property, did not properly

16 analyze accepted methodologies and made critical calculation

17 errors and failed to use appropriate or reliable data, thereby

18

19

20

21
22         [5]   This is known as the "before-and-after rule," and it is
   the accepted methodology for determining just compensation in
23 federal condemnation cases involving partial takings.  Id.
   Defendants' periodic reference in their papers to the "severance
24 damage rule," applied by some states, is inapposite.  (Under the
   severance damage rule, the market value of the land taken is
25 evaluated and then just compensation is determined by measuring
   the difference in the remainder's value before and after the
26 taking.)  Defendants have not cited any Ninth Circuit authority
   applying said rule in a federal condemnation case, nor is the
27 court aware of any such case.  Defendants' citation to Puget
   Sound Power & Light Company v. Pub. Util. Dist., 123 F.2d 286
28 (9th Cir. 1941) does not support defendants' argument; there, the
   Ninth Circuit applied the severance damage rule because it was a
   diversity case and the court applied Washington state law.

1   rendering his opinions inadmissible.[6]

2       The proponent of an expert has the burden of proving

3   admissibility.  Lust v. Merrell Dow Pharm., Inc., 89 F.3d 594,

4   598 (9th Cir. 1998).  The Federal Rules of Civil Procedure set

5   the minimum standards for expert opinions:

6           If scientific, technical or other specialized knowledge
            will assist the trier of fact to understand the evidence
7           or to determine a fact in issue, a witness qualified as
            an expert by knowledge, skill, experience, training, or
8           education, may testify thereto in the form of an opinion
            or otherwise, if (1) the testimony is based upon sufficient
9           facts or data, (2) the testimony is the product of reliable
            principles and methods, and (3) the witness has applied the
10          principles and methods reliably to the facts of the case.

11  Fed. R. Evid. 702.  District courts are charged with the

12  gate-keeping function of determining whether the proffered expert

13  testimony is both reliable and relevant.  Daubert v. Merrell Dow

14  Pharm., Inc., 509 U.S. 579, 589-90 (1993).  Daubert's screening

15  applies to all expert testimony, not just "scientific" testimony.

16  Id.  Nothing requires the district court to admit opinion

17  evidence that "is connected to existing data only by the *ipse*

18  *dixit* of the expert."  Gen. Elec. Co. v. Joiner, 522 U.S. 136,

19  146 (1997).  It is error to admit evidence that fails to satisfy

20

21

22          [6]    In plaintiff's moving papers, it argued that the
    undisputed facts demonstrate that the property's highest and best
23  use is agriculture/grazing.  Plaintiff argued that defendants had
    no admissible evidence that the property's highest and best use
24  was as a mitigation bank.  Mitigation banks are typically large
    parcels of land containing protected species and/or habitat that
25  are constructed, restored, enhanced or preserved and set aside
    for the express purpose of providing mitigation credits.   In
26  their opposition, defendants concede the property's highest and
    best use is agriculture/grazing, and they do not seek to base
27  their valuation of the property on any planned mitigation banking
    for the property.  As such, the court does not address this issue
28  herein as it is moot, considering defendants' concession.

Rule 702's[7] reliability requirement.  United States v. 99.66
Acres of Land, 970 F.2d 651, 654 (9th Cir. 1992).  Specifically
in condemnation actions, the Ninth Circuit has recognized that
expert opinions are admissible only if the expert is qualified
and the opinion is factually supported.  United States v. 429
Acres of Land, 612 F.2d 459, 462 (9th Cir. 1980); United States
v. 33.5 Acres of Land, 789 F.2d 1396, 1398 (9th Cir. 1986).

### 1.  **Nicolaou**

Plaintiff first argues that Nicolaou's valuation opinions
must be excluded because he lacks the requisite knowledge, skill,
experience, training or education to value federally-condemned
property.  (UF #70-78.)  Plaintiff bases its argument on the
following facts which are not in dispute:  Nicolaou has never
valued property condemned by the United States.  (UF #70.)  He
did not investigate the requirements for valuing
federally-condemned property before rendering an expert opinion
in this case.  (UF #71.)  He did not evaluate the differences
between state and federal condemnation requirements.  (UF #72.)
He did not seek review or input from an appraiser with relevant
federal condemnation experience.  (UF #73.)  He also did not
read, reference, or rely on the rules or regulations for valuing
federally-condemned property.  (UF #74.)  He testified that he
had "heard of" the Uniform Appraisal Standards for Federal Land
Acquisitions ("UASFLA") but admitted he did not review or rely on
them when rendering opinions in this case.  (UF #75.)  Instead,
Nicolaou testified he based his calculations on a "jury

---

[7]   All further references to a "Rule" are to the Federal
Rules of Civil Procedure.

instruction" provided to him by defendants' counsel, but he never produced the jury instruction at his deposition nor did he attach it to his expert report. (UF #s 76, 77.)  Finally, he has never been qualified as an expert in a federal condemnation case. (UF #98.)

Defendants have no admissible evidence to dispute these facts.  Moreover, while Nicolaou may be a qualified appraiser, as urged by defendants, his experience and apparent qualifications are in state condemnation proceedings, not federal which are governed by entirely different rules and regulations.  It is undisputed that Nicolaou failed to research appropriate valuation methodologies (consideration of a claimed jury instruction is not sufficient), failed to consult experienced federal appraisers, and otherwise failed to obtain the requisite knowledge, in the area of federal condemnations, before rendering his opinions in this case.  This alone provides a sufficient basis to reject Nicolaou's testimony.  Fed. R. Evid. 702; 429 Acres of Land, 612 F.2d at 462; 33.5 Acres, 789 F.2d at 1398. Brunette

However, there are additional bases for rejecting Nicolaou's opinions.  Nicolaou's valuation opinions are also flawed.  He did not perform the proper before-and-after analysis, which is the accepted methodology for determining just compensation in a federal partial takings case.  Miller, 317 U.S. at 376.  Under the before-and-after rule, the value of the entire tract is found prior to the taking, the value of the remainder is evaluated after the taking, and the difference equals the amount to which the owner is entitled.

11

Here, instead of calculating the difference between the fair market value of the larger parcel immediately before the take, and the value of the remainder parcel after the take, Nicolaou valued the 12.94 acres as though it was a separate parcel or this was a complete taking.  (RJN #14.)  Nicolaou valued the 12.94 acres at $400,000.00; he then subtracted that amount from the value of the whole (which he determined was $2,440,000) to arrive at the value of the remainder after the taking as $2,040,000.00. This is not a proper application of the before and after rule which does not permit separate valuation of the part taken.

Nicolaou's failure to use the correct before-and-after analysis of the larger and remainder parcels produced absurd valuation results.  Specifically, Nicolaou ultimately opined that the 306.76 acre larger parcel was worth $2,440,000 and that just compensation for the 12.94 acres was $2,319,000. (RJN #14.) With this valuation, the 293.82 acre remainder parcel is only worth $121,000 total, or $411.81 per acre.  This amount is in stark contrast to the sales contract that Nicolaou relied on for the larger parcel, which valued the land at $7,954.10 per acre. (RJN #14.)  Nicolaou never reconciles these conflicting values.

Moreover, to the extent Nicolaou attempted to perform the correct before-and-after analysis, indicating in one aspect of his report that the value of the remainder parcel after the taking was $1,028,000.00, he wholly fails to explain how this value was determined.  He does not use comparable data to support the figure or otherwise indicate how the value was ascertained. Nicolaou's opinion is not factually supported, and thus, it is inadmissible.  <u>429 Acres of Land</u>, 612 F.2d at 462; <u>33.5 Acres of</u>

<u>Land</u>, 789 F.2d at 1398.

Additionally, Nicolaou failed to use accepted methodologies to determine just compensation because he added the costs to cure access to the remainder of the property (a claimed $907,000.00) in performing his before-and-after analysis.  This is an incorrect application of the test as it results in double counting.  These costs should already be considered when determining the value of the remainder parcel in the after condition.  <u>Nichols on Eminent Domain</u>, 3d Ed., § 14.02(1) at 14-15.

Defendants do not proffer any authority to the contrary and indeed acknowledge in their opposition the controlling rule that in the "before and after calculation, severance damages are not separately calculated but are automatically factored into the calculation of the value of the remainder after the taking." (Opp'n, filed Nov. 9, 2009, at 12.)  Thus, defendants concede that double counting of costs violates the before-and-after rule.

Not only did Nicolaou fail to properly apply accepted methodologies for ascertaining the property's value in this case, his opinions must also be rejected because they are not based on reliable data.  <u>Daubert</u>, 509 U.S. at 589-90 (recognizing that an expert's opinion is inadmissible, as a matter of law, if it is not based on accepted methodologies *and* reliable data); <u>Decoud</u>, 456 F.3d at 1012 (accord).  Here, Nicolaou failed to analyze appropriate comparables.  Other sales are only useful if the properties evaluated are actually comparable.  <u>US v. 10.082 Acres of Land</u>, No. 05-363, 2007 WL 962846 (D. Ariz. Mar. 27, 2007). Comparability is a function of multiple variables including

13

property rights conveyed, financing terms, conditions of sale, market conditions, locations, physical characteristics, economic characteristics, use and zoning, and non-realty components of value included in the sale property. (UASFLA at 47, Appx. 6 to Pl.'s Mtn., filed Oct. 13, 2009 [Docket #90].)

Plaintiff contends Nicolaou improperly used $2.4 million as the value of the larger parcel because it was based on a prior sales contract for that amount that was not completed, it was more than twice as much as Nicolaou's next highest comparable and escrow had not closed on a sales contract for the property entered three years prior. (RJN #14.) Plaintiff is correct that governing appraisal standards, as well as case law, recognize that completed transactions are considered the most reliable value indicator. (Appraisal of Real Estates Rules at 302, Appx. 7 to Pl.'s Mtn.); see United States v. 55.22 Acres, 411 F.2d 432, 434 (9th Cir. 1969). However, an expert may properly consider non-consummated sales as some evidence supporting his valuation opinions, provided the sales are for *comparable* property. See United States v. 428.02 Acres of Land, 687 F.2d 266, 271 (8th Cir. 1982); United States v. Smith, 355 F.2d 807, 812 (5th Cir. 1966). In this case, Nicolaou's consideration of the prior sales contracts was not proper comparability analysis because the negotiated price was conditioned on the ability of the property to be used for unapproved uses. (UF #s 5-7.) The Bancor contract was conditioned on approval to subdivide and develop residential homes on the property, and SGA intended to buy the property for use as a mitigation bank and/or solar farm. (Id.) Neither of these prior unconsummated conditional sales reflected

14

use of the property for Nicoloau's claimed highest and best use
of "residential rural agricultural."

Alternatively, plaintiff emphasizes that Nicolaou's expert
report did not analyze, whatsoever, his seven other comparables,
as required by the Federal Rules of Civil Procedure.   For
example, Nicolaou did not discuss the significance, if any, of
the comparable properties' different zoning and usage, different
geographic locations and non-similar lot sizes and shapes.   (UF
#79.)  Nicolaou's failure to render this analysis violates Rule
26(a)(2)(B)'s disclosure obligations.[8]  Pursuant to Rule
37(c)(1), said evidence must be excluded.  <u>Yetti by Molly, Ltd.
v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001)
(holding that Rule 37(c)(1) is intended to be a self-executing,
automatic sanction to provide a strong inducement for disclosure
of material as required by Rule 26; the automatic exclusion rule
is applied not only at trial but also with respect to any motion,
such as a motion for summary judgment).  Thus, Nicolaou's report
violates the prescriptions of Rule 26 in failing to consider
adequately all of the proffered comparables, and thus, his
opinions are properly excluded on this alternative basis.

Finally, even if Nicolaou's opinions on the costs to cure
were relevant to the inquiry, his opinions would nonetheless be
inadmissible since they are based on unreliable data.  Nicolaou
bases his costs to cure analysis on a bid by Hess Construction

---

[8]      Said Rule requires, in pertinent part, that an expert
report contain: "(i) a complete statement of all opinions the
witness will express and the basis and reasons for them; (ii) the
date or other information considered by the witness in forming
them; [and] (iii) any exhibits that will be used to summarize or
support them[.]"

for $273,420.00.  However, at his deposition, Nicolaou questioned the reliability of that bid, and he conceded the amount provided was not calculated on the correct valuation date (the date of condemnation).  Nicolaou also conceded that he knew further information was needed to form an accurate opinion as to the costs to cure.  (UF #90.)

Defendants assert that Nicolaou simply questioned the Hess Construction bid's reliability, not its accuracy.  Defendants' argument is a distinction without a difference.  Nicoloau's opinions must be based on reliable and accurate data.  He concedes Hess' estimate was not such data.  He thus had no reasonable basis to rely on it.

Thus, for all of the above reasons, Nicolaou's valuation testimony must be excluded.  He lacks sufficient qualifications to provide such testimony in this federal condemnation action, and even if he had adequate qualifications, his analysis is flawed as it improperly applies the accepted methodologies and is based on unreliable data.

**2.  <u>Maher</u>**

Beside Nicolaou's testimony, defendants rely on only Maher to establish the amount of just compensation in this case. Plaintiff contends that Maher cannot create a triable issue of fact because his testimony during deposition and declaration submitted on the motion do not offer any valuation opinions. While case law generally recognizes that the owner of land is qualified to express his opinion as to its value merely by virtue

16

of his ownership,[9] here, Maher does not offer *any* opinions as to valuation.  (UF #s 92-102.)  At his deposition, Maher testified: (1) he could not identify or estimate the date of condemnation and he stated he believed that value and just compensation change over time (UF #s 94-95); (2) while he testified that 20 acres may be worth $40,000 per acre if used as mini-storage, he admitted the subject property was not approved for that use, rezoning was never requested and the Williamson Act contract for the property precludes it (UF #s 96-100); (3) he admitted he had no valuation of the 286 acres, the majority of which was encumbered by aviation easements and had limited use (UF #100); and (4) he admitted he had not yet formed any valuation opinions at the time of his deposition and he would "probably" rely on Nicolaou's opinion (UF #101).

Moreover, Maher's declaration on the motion simply authenticates various photographs of the property; it does not provide any valuation opinions.  (Maher Decl., filed Nov. 9, 2009 [Docket #96].)  Thus, Maher has not presented any admissible valuation opinions, and his testimony does not create a triable issue of fact as to the property's valuation.

While the court acknowledges that summary judgment in a condemnation case is rare,[10] in this case, the court must grant

---

[9]     See e.g.  US v. 329.73 Acres of Land, 666 F.2d 281 (5th Cir. 1982) (rejecting appellant's attack on the probative value of the landowner's testimony on the grounds that it was not based on any accepted method of valuation because "opinion testimony of a landowner as to the value of his land is admissible without further qualification"); US v. 3,698.63 Acres of Land, 416 F.2d 65 (8th Cir. 1969) (accord).

[10]    See Opp'n at 7-9 (citing cases).

plaintiff's motion since defendants lack *any* admissible evidence on the issue of valuation.  See e.g. Hardy Storage Co. v. Property Interests, No. 07CV5, 2009 WL 689054 (N.D.W. Va. Mar. 9, 2009) (granting summary judgment to the government where the defendant property owner failed to proffer any appraisal evidence).  Defendants' proffered expert Nicolaou lacks the necessary qualifications to provide expert testimony in this case, and even were the court to find him qualified, his testimony would be inadmissible because Nicolaou improperly applies the accepted methodologies and bases his opinions on unreliable data.  Additionally, defendants cannot rely on Maher since he wholly failed to offer any valuation opinions.  Lastly, defendants failed to obtain rebuttal expert reports to refute plaintiff's experts' opinions.  As a result, the only admissible evidence before the court of valuation of the taken parcel is plaintiff's evidence, establishing just compensation at $295,000.00.  It is not for the court to set the amount of just compensation.  Rather, the court is bound by the admissible evidence in the case, and where plaintiff has demonstrated no issue of material fact as to the property's value, the court must grant plaintiff's motion for summary judgment.

## CONCLUSION

     For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED.  Defendants do not have any admissible valuation opinions and offer no rebuttal experts to plaintiff's experts.  Judgment is therefore entered in plaintiff's favor in the amount of $295,000.00, representing the amount of just compensation for the partial taking of the 12.94 acres of land in

1   Solano County.

2        The March 23, 2010 bench trial is HEREBY VACATED.  The Clerk

3   of the Court is directed to close this file.

4        IT IS SO ORDERED.

5    DATED: December 8, 2009

6

7   _____

8                                    FRANK C. DAMRELL, JR.
                                     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28